# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| David Roy Hill, | ) | |
| --- | --- | --- |
| | ) | Civil Action No. 0:15-cv-05091-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner of the Social Security Administration,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff David Roy Hill ("Plaintiff") filed this action seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1.) This matter is before the court for review of the Report and Recommendation ("Report") of United States Magistrate Judge Paige J. Gossett, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a) (D.S.C.). (ECF No. 19.) The Magistrate Judge recommended affirming the Commissioner's final decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*Id.* at 13.) Plaintiff timely filed objections to the Magistrate Judge's Report. (ECF No. 23.) For the reasons set forth below, the court **RECOMMITS** the matter to the Magistrate Judge for further proceedings.

## I. RELEVANT BACKGROUND AND LEGAL FRAMEWORK

A thorough recitation of the relevant factual and procedural background of this matter is discussed in the Report. (*See* ECF No. 19.) The court concludes, upon its own careful review of

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Acting Commissioner Nancy A. Berryhill has been substituted for former Acting Commissioner Carolyn W. Colvin as the named defendant in this lawsuit. (*See* ECF No. 19 at 1 n.1.)

1

the record, that the Magistrate Judge's factual and procedural summation is accurate and incorporates it by reference. The court will only reference herein facts pertinent to its analysis.

**A. Administrative proceedings**

On September 25, 2012, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of July 31, 2010, due to protruding or bulging discs in his neck and back; arthritis in his shoulder, radiating pain in his neck, shoulder, and arm; degenerative disc disease; and side effects from medication. (ECF No. 10-5 at 2, 9; ECF No. 10-6 at 6, 14.) Plaintiff's claims were denied on January 11, 2013, and again on reconsideration on January 14, 2013. (ECF No. 10-3 at 2-15; ECF No. 10-4 at 2-9.)

On March 4, 2014, Plaintiff had a hearing before Administrative Law Judge Thomas G. Henderson (ECF No. 10-2 at 53-69), who found on March 28, 2014, that Plaintiff was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (ECF No. 10-3 at 21-29). Plaintiff appealed, and, on April 14, 2015, the Appeals Council vacated Henderson's decision in light of new evidence presented on appeal and remanded the case for further proceedings. (*Id.* at 33-35.)

On July 21, 2015, Plaintiff had a second hearing before Administrative Law Judge Marcus Christ (the "ALJ"). (ECF No. 10-2 at 32-52.) On August 31, 2015, the ALJ again found that Plaintiff was not disabled under the Social Security Act provisions. (*Id.* at 17-26.) Thereafter, the Appeals Council denied Plaintiff's request for review on April 24, 2015, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (*Id* at 14-16.)

**B. The legal framework for the ALJ's decision**

The ALJ's decision followed the familiar five-step process for making a disability determination:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [relevant] regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform h[is] past work given the limitations caused by h[is] medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

"If a claimant fails to demonstrate he has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") . . . , which is 'the most the claimant can still do despite [his] physical and mental limitations that affect [his] ability to work.'" *Lewis v. Berryhill*, ___ F.3d ___, No. 15-2473, 2017 WL 2381113, at *2 (4th Cir. June 2, 2017) (brackets omitted) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). When assessing a claimant's RFC,

> the ALJ must examine "all of the claimant's medically determinable impairments of which the ALJ is aware," "including those not labeled severe at step two." In addition, he must "consider all the claimant's symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." "When the medical signs or laboratory findings show that the claimant has . . . medically determinable impairment[s] that could reasonably be expected to produce [his] symptoms, such as pain, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms so that the ALJ can determine how [his] symptoms limit [his] capacity for work."

*Id.* (internal citations and brackets omitted) (quoting *Mascio*, 780 F.3d at 635; 20 C.F.R. §§ 404.1525(a)(2), 404.1529(a), (c)(1), 416.925(a)(2), 416.929(a), (c)(1)). Regarding the specific circumstance when a claimant relies on subjective complaints regarding his pain as evidence of a restriction on his RFC, the ALJ is to "follow[] a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Id.* at *5 (citing 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c)). Specifically,

3

> [f]irst, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.

*Id.* (internal citations omitted) (citing 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c)); *see also Craig v. Chater*, 76 F.3d 585, 594-96 (4th Cir. 1996) (describing two-part test at length). Importantly, "[t]he second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Lewis*, 2017 WL 2381113, at *5 (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

**C. The ALJ's decision**

Here, regarding the first two steps, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and had severe impairments, namely cervical pain, lumbar pain, and right AC joint arthritis. (ECF No. 10-2 at 19.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.* at 20.) Before proceeding to the fourth and fifth steps, the ALJ determined that Plaintiff had an RFC allowing him to perform sedentary work with limitations precluding him from climbing ladders and scaffolds; permitting him to occasionally stoop, crouch, kneel, crawl, and reach overhead with his right arm; avoiding all exposure to unprotected heights and concentrated use of moving machinery; and limiting him to simple routine tasks without production rates or pace work. (*Id.*)

In assessing Plaintiff's RFC, the ALJ addressed Plaintiff's subjective statements about his pain and other symptoms by following the two-step analysis set forth above. (*See id.*) As for the first step, the ALJ found that the objective medical evidence in the record could reasonably produce

4

the symptoms of which Plaintiff complained. (*Id.* at 23.) However, as for the second step, the ALJ found that Plaintiff's subjective statements as to the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." (*Id.*) Although the ALJ found that Plaintiff's statements were not entirely false, he found them to be "exaggerated" and specifically found Plaintiff's allegations that he is unable to perform all work activity "not credible." (*Id.* at 24-25.) Accordingly, the ALJ relied on Plaintiff's subjective statements to support the addition of limitations on Plaintiff's RFC, but he did not view them as a basis for concluding that Plaintiff was disabled. (*Id.*)

In making his credibility determination, the ALJ began by contrasting the testimony Plaintiff offered in the first hearing before Administrative Law Judge Henderson with the testimony he offered at the second hearing. The ALJ summarized Plaintiff's testimony at the first and second hearings, and noted several inconsistencies. (*Id.* at 20-21.) The ALJ noted that Plaintiff's testimony as to the reason he stopped working was inconsistent, as he first testified that he stopped working due to an upcoming move and later testified he stopped working due to his physical condition. (*Id.* at 24.) The ALJ also noted that, despite his claims of chronic debilitating pain, Plaintiff had made several 12-hour road trips for pain management appointments. (*Id.*) The ALJ further noted that Plaintiff had also testified that he engaged, to some degree, in cooking, driving, and grocery shopping, despite claiming that he was disabled. (*Id.*) The ALJ noted as well that, although Plaintiff complained of the side effects of his medications in his testimony, he had several times denied any side effects. (*Id.*) Lastly, the ALJ noted that, despite Plaintiff's claim that he was unable to work as of July 2010, he did not seek any medical attention until over a year later. (*Id.* at 21, 23-24.) For these reasons and because the ALJ did not find Plaintiff's representations as to his symptoms' severity to be substantiated by objective medical evidence, the ALJ "could not find [Plaintiff] fully credible." (*Id.* at 24-25.)

Aside from Plaintiff's testimony, the ALJ also summarized and assessed the treatment notes available in the record. The ALJ catalogued Plaintiff's medical examinations and treatments from 2011 to 2015, and overall the ALJ appears to have viewed Plaintiff's symptoms as restricting the work he could perform but not so much as to be disabling and also generally improving over time with treatment. (*See id.* at 21-24.) After cataloguing the treatment notes, the ALJ concluded that Plaintiff's "reports of severe chronic pain are not supported by the medical evidence." (*Id.* at 24.) One treatment note described by the ALJ is of note here. For a November 2011 examination, the ALJ noted that the physician found that Plaintiff's "gait was normal," that "he had a full range of motion of all joints in the upper and lower extremities," that "[h]e required no assistive device for ambulation," and that "his palpitation and tenderness were normal." (*Id.* at 21 (citing ECF No. 10-7 at 33).)

The ALJ also assessed the weight of the medical opinions in the record. The ALJ emphasized that no treating physician had ever directed Plaintiff to refrain from work. (*Id.* at 24.) The ALJ also took note of the RFC conclusion reached by a state-employed non-examining physician. (*Id.*) Although the ALJ accorded this opinion less weight than the weight he would accord the opinion of a treating physician, the ALJ found that the non-treating physician's opinion should be accorded some weight because it was supported by objective medical evidence. (*Id.*; *see* ECF No. 10-3 at 5-8, 12-15.)

Having assessed Plaintiff's RFC, the ALJ moved on to steps four and five. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (ECF No. 10-2 at 25.) At step five, the ALJ, considering Plaintiff's age, education, work experience, and RFC found that there existed jobs of significant number in the national economy that Plaintiff could perform. (*Id.*)

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 26.)

**C. District court proceedings**

On December 30, 2015, Plaintiff commenced the instant action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for DIB and SSI. (ECF No. 1.) In his brief, Plaintiff argued that the ALJ's assessment of his RFC is not supported by substantial evidence. (ECF No. 14 at 11-14.) Specifically, Plaintiff disputed the ALJ's finding that he did not seek medical attention for more than a year after his alleged onset date and asserted that the ALJ emphasized unfavorable portions of his treatment history and ignored favorable portions; that the ALJ failed to accord weight to the fact that Plaintiff's physicians prescribed him powerful medication; that the ALJ erred by scrutinizing the record for objective support for Plaintiff's subjective assessment of his symptoms once the ALJ found that the objective medical evidence discloses conditions that reasonably could produce the symptoms; that the ALJ erred by failing to identify Plaintiff's subjective complaints of pain as well as the evidence that supports or contradicts that complaint; that the ALJ's observation that Plaintiff drove, cooked, and shopped does not support the RFC determination; and that the ALJ presented only a one-sided view of the record and ignored evidence contradicting his RFC finding. (*Id.*) In his response to the Commissioner's brief, Plaintiff reduced these contentions down to two main points: (1) "the ALJ failed to explain the weight given to evidence which contradicted his RFC finding," and (2) the ALJ "failed to connect some of the facts he used to discredit [Plaintiff] to the RFC finding itself." (ECF No. 17 at 1-2.)

Of all of the arguments advanced in Plaintiff's briefing, two are particularly noteworthy here. First, Plaintiff challenged the ALJ's method of cataloguing the various treatment notes in the

record. (ECF No. 14 at 11-12.) In Plaintiff's view, the ALJ's method of describing the treatment notes was one-sided, emphasizing portions of the treatment notes that were unfavorable to Plaintiff and ignoring or minimizing portions of the treatment notes that were favorable to Plaintiff. (*See id.* at 11-13.) For instance, Plaintiff points out that the ALJ's description of the November 2011 examination failed to account for the portion of the treatment note stating that Plaintiff's right shoulder exhibited a spasm and that Plaintiff had diffuse pain over his right shoulder area. (*Id.* at 11 (citing ECF No. 10-7 at 33).) Plaintiff also pointed to other instances in which he argued that the ALJ cherrypicked unfavorable portions of treatment notes (*see id.* at 11), and he argued generally that the ALJ's recitation of the medical evidence in the record was one-sided (*see* ECF No. 17 at 2). In Plaintiff's view, the "ALJ cannot simply gloss over the supportive portions of the record and identify only those facts that support his conclusions; . . . he must explain the weight given to different exhibits and construct a written rationale that will survive review under the substantial evidence standard." (ECF No. 17 at 2.)

Second, Plaintiff argued that the ALJ failed to explain how the treatment notes in the record and Plaintiff's reports of his daily activities related to his subjective statements of pain and other symptoms. In Plaintiff's view, the ALJ relied on negative examination results to conclude that the results did not support Plaintiff's claims of disabling pain but failed to explain how the negative results undermined, or were inconsistent with, Plaintiff's claims. (*See id.*) Likewise, in Plaintiff's view, the ALJ relied on some of Plaintiff's activities—driving, cooking, and shopping—to conclude that these activities did not support Plaintiff's claims of pain but failed to explain how Plaintiff's ability to engage in these activities to the extent he did is inconsistent with his subjective claims of pain. (*See id.*)

8

On February 24, 2017, the Magistrate Judge issued her recommendation that the Commissioner's final decision denying Plaintiff's claim for DIB and SSI be affirmed. (ECF No. 19.) In her Report, the Magistrate Judge noted the arguments Plaintiff raised in his brief and rejected all of them. (*See id.* at 9-13.) Specifically, the Magistrate Judge addressed Plaintiff's arguments that the ALJ failed to explain what weight he gave to the treating physicians' decisions to prescribe Plaintiff powerful medications and spinal surgery, that the ALJ presented a one-sided view of Plaintiff's treatment notes, and that the ALJ did not explain how Plaintiff's daily activities were inconsistent with his claim that he was disabled. (*Id.* at 11.) The Magistrate Judge concluded that Plaintiff "failed to demonstrate the ALJ's determination regarding [Plaintiff]'s credibility is unsupported or controlled by an error of law." (*Id.* at 12.) In reaching this conclusion, the Magistrate Judge explained that the ALJ considered and evaluated the relevant factors in weighing Plaintiff's credibility, that consideration of Plaintiff's daily activities was only one factor in this assessment, and that Plaintiff's reliance on his own one-sided view of the available objective medical evidence on the record does not mean that the ALJ's decision was not supported by substantial evidence. (*Id.*)

In his objections to the Report, Plaintiff challenges the Magistrate Judge's conclusion that the ALJ did not err in assessing Plaintiff's credibility or his RFC. (ECF No. 23 at 1.) Plaintiff appears to raise four arguments. First, Plaintiff again seems to assert that the ALJ relied on a one-sided view of the medical evidence in the record, which prevents this court from determining that his RFC finding is supported by substantial evidence. (*Id.* at 2.) Second, Plaintiff argues that his history as a consistent wage-earner for most of his life "does not support the ALJ's portrait of a liar or malingerer who exaggerated his symptoms." (*Id.* at 3.) Third, Plaintiff argues that his treating physicians' decisions to prescribe him powerful medications and recommend spinal fusion

9

surgery should have been accorded more weight by the ALJ. (*Id.* at 3-4.) Fourth, Plaintiff argues that "the ALJ failed to connect his factual and credibility findings to his RFC assessment." (*Id.* at 3.) By this, Plaintiff appears to contend that the ALJ did not explain how certain facts he emphasized—that Plaintiff did not seek medical treatment for more than a year after the alleged onset date, that several tests showed Plaintiff had normal gait and strength, that Plaintiff made several 12-hour road trips—are inconsistent with Plaintiff's claim of disabling pain. (*See id.* at 3-4.)

## II. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report and Recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543

(4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### III. ANALYSIS

Following the issuance of the Magistrate Judge's Report and the filing of Plaintiff's objections, the Fourth Circuit issued its opinion in *Lewis v. Berryhill*, 2017 WL 2381113. In *Lewis*, the Fourth Circuit confronted an ALJ's RFC finding that employed the two-step analysis for assessing a claimant's subjective claims of disabling pain. *See id.* at *2, *4-5. The parties agreed that, as for the first-step, the ALJ had properly determined that the objective medical evidence in the record could reasonably be expected to produce the pain and symptoms the claimant alleged, but they disagreed as to the second step of the analysis. *See id.* at *6. The district court affirmed the ALJ's RFC finding, and the claimant appealed. *See id.* at *1.

In vacating the district court's affirmance, the Fourth Circuit underscored two principles regarding an ALJ's RFC assessment under the two-step analysis set out above. First, relying on a Seventh Circuit opinion, the Fourth Circuit emphasized that "'[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding

11

of nondisability while ignoring evidence that points to a disability finding.'" *Id.* at *8 (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Applying this principle to the facts in *Lewis*, the Fourth Circuit determined that an ALJ cannot cherrypick certain portions of a treatment note that are unfavorable to a claimant while ignoring other portions of the same treatment note that are favorable to the claimant. The Fourth Circuit's criticism of the ALJ's analysis with regard to the treatment note at issue in *Lewis* could easily parallel some of Plaintiff's criticisms in the instant case:

> In the same medical records containing the "normal" findings relied upon by the ALJ, the physician also noted that Lewis presented with "stabbing, burning throbbing and tingling, constant pain that increases with elevating the hand above the shoulder and decreases by rest . . . . neck pain is really bothering her today," that a left shoulder MRI "showed scelerotic [sic] lesion," and that Lewis indicated "left shoulder pain with marked discomfort on [range of motion] ... with pain on shoulder abduction and extension of arm." And Lewis was given a steroid injection into her shoulder at the conclusion of the appointment.

*Id.* at *8 (internal citations and brackets omitted).

Second, the Fourth Circuit also emphasized that, when assessing a claimant's subjective claims of pain or other symptoms, if an ALJ relies on the results of objective medical examinations reported in a treatment note to find that the claimant's claims are inconsistent with those results, the ALJ must explain *how* those results are inconsistent with the claims. Thus, in *Lewis*, the Fourth Circuit criticized the ALJ's analysis because he "did not indicate how the results [reported in treatment notes] he cited were relevant to the functional limitations Lewis suffered as a result of her . . . pain." *Id.* at *9 (citing *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016).) Once again, the application of this principle in *Lewis* bears a striking similarity to the manner in which Plaintiff argues it should be applied in the instant case: "The ALJ does not explain, for instance, how Lewis' normal gait bears any nexus to her complaint of . . . pain." *Id.*

12

As previously noted, the Magistrate Judge issued her Report before *Lewis* was issued. Moreover, the court also notes that it does not appear that the two principles described in the preceding paragraphs were firmly established in the Fourth Circuit prior to *Lewis*. The first principle appears to have been adopted in *Lewis* by the Fourth Circuit from Seventh Circuit case law. Although the *Lewis* court relied on a recent Fourth Circuit opinion in support of the second principle, it does not appear that principle was clearly stated until the opinion in *Lewis*. Thus, it appears that the Magistrate Judge lacked the benefit of a clear statement of the two principles described above from the Fourth Circuit before issuing her recommendation.

Both in his briefing before the Magistrate Judge and in his objections to her Report, Plaintiff asserted arguments that fall under the two principles that later received the Fourth Circuit's clear approval and application in *Lewis*. The court is uncertain how the clear expression and application of these principles by the *Lewis* court might affect the Magistrate Judge's appraisal of the ALJ's RFC analysis. Accordingly, the court concludes that the matter should be recommitted to the Magistrate Judge to evaluate Plaintiff's arguments in the first instance in light of the Fourth Circuit's opinion in *Lewis*.

## IV. CONCLUSION

For the foregoing reasons, this matter is **RECOMMITTED** to the Magistrate Judge for further proceedings consistent with this order.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Court Judge

June 23, 2017
Columbia, South Carolina